FILED & JUDGMENT ENTERED
Steven T. Salata

May 10 2022

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| **BK Racing, LLC**, | )     Chapter 11 |
| | )     Case No. 18-30241 |
|         Debtor. | ) |
| | ) |
| **Matthew W. Smith the sole manager** | ) |
| **for BK RACING, LLC,** | ) |
|         Plaintiff, | ) |
| v. | ) |
| | )     Adversary Proceeding No: 20-03007 |
| **Nancy J. O'Haro,** | ) |
|         Defendant. | ) |
| | ) |

## ORDER ON PLAINTIFF'S RENEWED MOTIONS TO COMPEL

**THIS MATTER** is before this Court upon Plaintiff's Report and Brief Regarding

Defendant's Failure to Comply With: (A) Discovery Requests, and (B) Court Orders, ("Plaintiff's

Report")[Doc. No. 45] and the Defendant's Brief in Opposition to Plaintiffs Report and Brief

("Defendant's Brief") [Doc. No. 46]. A hearing was held on January 4-5, 2022. Andrew T.

Houston, Esq. and Caleb Brown, Esq. appeared on behalf of Plaintiff Matthew W. Smith, the Sole

Manager for BK Racing under its Confirmed Plan, and the former Chapter 11 Trustee of the

Debtor's bankruptcy estate ("Smith"). John C. Woodman, Esq. and David R. DiMatteo, Esq. appeared on behalf of Defendant Nancy J. O'Haro ("O'Haro").

For the reasons stated herein, the Plaintiff's two Motions to Compel, as reasserted, are **GRANTED IN PART, DENIED IN PART.**

## PROCEDURAL POSTURE

This is one of three related adversary proceedings in this bankruptcy case in which the parties are represented by the same attorneys and in which protracted discovery disputes have arisen. The others are Smith v. DiSeveria, Adv. No. 20-03057, and Smith v. Devine, Adv. No. 20-03014 (Inclusive of the present adversary proceeding, the "Related Cases").

In the Related Cases, Smith has filed motions to compel discovery against the defendants. Here, Smith filed his first Motion to Compel against O'Haro on July 9, 2021("First Motion"). [Doc. 22]. The First Motion addressed discovery failures by O'Haro as to Smith's First Set of Interrogatories, and Requests for Production of Documents served on May 4, 2021 ( "First Discovery Requests"). A hearing was held, and the First Motion was granted by Order dated August 6, 2021. ("First Discovery Order") [Doc. 28]. O'Haro's countermotion for a protective order was denied, and O'Haro was ordered to rework her discovery responses. Id. The matter was put aside to permit her time to do so.

Smith filed his second Motion to Compel on August 17, 2021 ("Second Motion") [Doc. 29]. The Second Motion addressed discovery failures as to Smith's Second Discovery Requests (Interrogatories) dated June 9, 2021( "Second Discovery Requests"). The Second Motion was resolved by agreement by Order dated September 17, 2021. ("Second Discovery Order") [Doc.

28]. O'Haro was ordered to rework her responses to Smith's Second Discovery Requests and to certify that she had fully responded and identified all responsive bank accounts. Id.

Now, by his Report, Smith renews his motions to compel, arguing that O'Haro has continued in her failures to make discovery. In addition to the deficiencies originally asserted, Smith says O'Haro has violated the First Discovery Order by (a) failing to produce documents on or before the August 17, 2021 deadline and (b) failing to produce all documents responsive to his First Discovery Requests.

As to the Second Discovery Order, Smith says O'Haro has again failed to fully answer his Second Interrogatories by failing to disclose all responsive bank accounts.

Finally, in his Report, Smith asserts a failure by O'Haro to make discovery because of her invocation of the Fifth Amendment during her November 9, 2021 deposition ("Deposition"). On that occasion, O'Haro repeatedly declined to answer questions about the matters at issue.

For these failures, Smith asks this Court: (1) to tax O'Haro with his costs and attorneys' fees, and significantly, (2) to enter default judgment against her in this action.

O'Haro denies any willful failure on her part[1] to make discovery. She says she has answered Smith's interrogatories to the best of her ability and has produced all responsive documents to which she has access. O'Haro says she has attempted to discern the bank accounts which Smith believes to be undisclosed. O'Haro complains that Smith, by subpoena, has already obtained all account information from her bank but refuses to identify the missing accounts. This, O'Haro maintains, is intended to falsely portray her as having willfully failed to make discovery.

---

[1], O'Haro says Smith has not fully responded to her own discovery requests. Defendant's Brief, p.3 [Doc. 46]. However, O'Haro has not filed a motion to compel. Her arguments in this regard will not be considered.

As to her invocation of the Fifth Amendment,  O'Haro says Smith insisted that she be deposed at a time in which she was under a  federal grand jury subpoena compelling her to testify  about BK Racing.  O' Haro invoked the Privilege at the Deposition on advice of counsel and due to the overlap in subject matter.  Again, O'Haro accuses  Smith  of  insisting that the Deposition proceed to set  up  his present argument that  she is hiding something.

At hearing, O'Haro asked that Smith's request for sanctions be denied; discovery be stayed  for 45 days to her time to be released from the Subpoena;  or  alternatively,  to end discovery and proceed to dispositive motions and a trial. Finally, O'Haro  asked that Smith be taxed with her costs and attorneys' fees for having to defend this dispute.

At hearing, Smith presented his declaration (the "Smith Declaration"). Report, Ex. 1 [Doc. 45], and O'Haro submitted her own declaration (the "O'Haro Declaration") [Doc. 47] . Both declarations and a number of exhibits were admitted into evidence, by stipulation.

## BACKGROUND

BK Racing, LLC ("BK Racing" or Debtor") is a North Carolina limited liability company that was formed in December 2011. BK Racing is indirectly owned by Virginia businessman, Ronald C. Devine ("Ron Devine") and his wife, Brenda S. Devine (collectively, the "Devine's").[2] Ron Devine operated BK Racing on a day-to-day basis.

 From 2012 through early 2018, the Debtor owned and operated a NASCAR Cup Series race team. On February 15, 2018, meaning, the week of the Daytona 500 and the start of the NASCAR race season, BK Racing Debtor filed an emergency Chapter 11 petition in this

---

[2] The Devine's owned their majority equity interest in the Debtor indirectly through Virginia Racers Group, LLC.

District. This "bare bones" filing was a last gasp effort to prevent the appointment of a state court receiver for BK Racing.

For the next several weeks, BK Racing proceeded to race while ignoring most of its legal responsibilities as a debtor in possession. The Debtor spent lenders' cash collateral without authorization; it operated (raced) without liability insurance; and it even failed to file a creditors matrix or schedules in the case, just to name a few improprieties.

When, after six weeks into the case, the Debtor had still not rectified these problems, it became necessary to supplant management. On March 30, 2018, Smith was appointed Chapter 11 trustee to manage the Debtor's operations and affairs. With few resources, less information, and very little cooperation from prior management, Smith operated BK Racing for most of the NASCAR season. On August 24, 2018, the race team assets were sold. Order Approving Sale of Race team Assets [Doc. 191].

On January 28, 2020, a Chapter 11 Plan was confirmed. [Doc. 408]. Under the Plan, Smith became the "Sole Manager for the Reorganized Debtor," a position legally equivalent to being a trustee. Smith was charged with investigating and bringing causes of action on behalf of the debtor's creditors, who remained largely unpaid. Such actions are the only prospect of creditors, including employees, recovering any meaningful distribution on their claims.

Smith filed this action on February 10, 2020. The Complaint asserts that BK Racing made fraudulent, unauthorized post-petition, or preferential transfers to O'Haro totaling at least $107,015.00 between March 24, 2017 and March 19, 2018 and while the Debtor was insolvent, undercapitalized and/or not paying its debts (the "Transfers") [Doc. 1]..[3] The Complaint seeks

---

[3] Smith believes there could be other undisclosed transfers.

to avoid and recover the Transfers pursuant to 11 U.S.C. §§ 542, 544, 547-549 and 550, as well as N.C. Gen. Stat. § 39-23.1 et seq..

The Related Cases are brought against putative insiders of the Debtor, including company principals Ron and Brenda Devine, their family trusts, corporations, and business associates, together with various past officers, managers and/or shareholders of the Debtor.[4] They each involve avoidance and recovery actions, among other causes or action.

In the present case, Defendant O'Haro has a complicated, and not entirely transparent, relationship with Ronald Devine and his entities, including the Debtor. In the first instance, O'Haro is Ron Devine's former personal assistant and a self-described friend. Defendant's Brief, p.2 [[Doc. 46].

Now age 71 and retired, O'Haro was at the time of the Transfers, a long-time employee of A&R Foods, Inc. ("A&R"). A&R is one of Mr. Devine's numerous corporate entities. O'Haro, a high school graduate, appears to have performed a secretarial/administrative role at A&R and perhaps in other Ron Devine entities. In the early weeks of the case, and prior to Smith's appointment, O'Haro was heavily involved in the effort to compile financial information for the preparation of BK Racing's bankruptcy Schedules. O'Haro corresponded by email with Ron Devine and Debtor's counsel about these matters. Ultimately, the Schedules were never filed, and as a result, millions of dollars of transfers to insiders and affiliates (including the Transfers to O'Haro) were concealed.

---

[4] Smith has brought adversary claims against still other parties, who while further removed, nevertheless had close business associations with BK Racing. These include Smith v. GGR Enterprise, Adv. No. 20-3033(sponsor/driver) and Smith v. Race Engines Plus, LLC, Adv. No. 20-03012 (engine builder) .

O'Haro is also the successor trustee of the BRBRC Irrevocable Trust, a recently discovered, self-settled spendthrift trust that Devine established in 2018 to support himself and his family in the face of litigation and tax liens.[5]

O'Haro also appears to be either a lender to, (her contention) or else a conduit for (Smith's contention), other Ron Devine entities. Smith's investigation has revealed substantial amounts of money that were deposited into bank accounts titled in O'Haro's name and then transferred to other Ron Devine entities. Most notably, O'Haro appeared as a putative creditor in the Chapter 11 bankruptcy case of another Ron Devine entity, Springfield Land Development, LLC ("Springfield") in the Eastern District of Virginia. Case No 18-13583. In that case, O'Haro tried to enforce a second deed of trust in the amount of $560,000.00, based on loans she purportedly made to Springfield.

One of the primary questions in the present action is whether the nine (9) prepetition Transfers made to O'Haro by the Debtor between 2017-18 were repayments of loans or something else. Smith maintains they were not loan repayments--because O'Haro has produced no loan documents, fixed interest rate or payment schedules, maturity dates, terms of any kind or security, among other things.

O'Haro contends the Transfers are loan repayments.[6] but despite Smith's discovery requests, she has provided little extrinsic evidence to support her contentions. Only checks have been produced to document the alleged loans.[7] The reason according, to O'Haro, is these loans

---

[5] Devine was previously held in contempt for his failure to disclose this trust and to produce related documents, in response to a 2019 subpoena. See Adv. No. 20-0314 [Doc. 43].

[6] O'Haro maintains that these loan repayments are not avoidable because (i) she is not an insider of the debtor under Section 101(31), and (2) she extended new value to the Debtor. Defendant's Brief p. 6 [Doc. No. 46]

[7] Admittedly, most of the checks in question have the word "Loan" handwritten in the memo section.

were informal, short-term advances made to BK Racing at Ron Devine's request. According to her, no documents, ledgers communications, or other extrinsic evidence exist.

Before the motions to compel were filed, but after months of delay and failed efforts to schedule mediation in the Related Cases,[8] status and scheduling hearings were conducted on March 23, 2021, April 6, 2021, and April 27, 2021. During those hearings, the Court expressed concern about the case delays. Having previously witnessed  dilatory tactics by the Debtor and its principals  in the base bankruptcy case, the Court was concerned that the same  thing might be beginning  in the adversary proceedings. Thus, the Court explicitly warned the Related Case defendants that further delay and noncompliance in discovery could result in default judgments and/or striking pleadings.

### Smith's Discovery Requests and O'Haro's  Responses.

#### *1. The First Discovery Requests, Motion to Compel and  Discovery Order.*

On May 4, 2021, Smith served his First Set of Interrogatories and Request for Production of Documents on O'Haro (the "First Discovery Requests"). Similar discovery requests were made in the other Related Cases.

<u>Original First Discovery Responses</u>

On June 8, 2021, Smith received O'Haro's responses to his First Discovery Requests (the "Original First Discovery Responses").  In these, O'Haro interposed multiple objections to most, if not all, of Smith's interrogatories and requests for production. O'Haro's responses to the interrogatories were generally vague and failed to fully answer the questions posed. Very few factual details were provided. And  while O'Haro contended that she had  made loans to the

---

[8] Ron Devine insisted that the Internal Revenue Service, a BK Racing creditor, but a nonparty to the Related Cases, be a part of the mediation.

Debtor, she failed to provide the requested loan terms or to identify the circumstances under which the alleged loans were made.

As to Smith's document requests,  not a single document was then produced. [9] In most instances, O'Haro asserted broad objections to the document requests--privilege, relevance, etc. O'Haro repeatedly stated that she would produce documents that she deemed relevant and nonprivileged. However, no privilege logs were submitted, and O'Haro did not otherwise identify the  documents being withheld. Thus, one could not discern whether the Defendant was withholding any documents under claims of privilege.

Finally, the Original First Discovery Responses were not signed by O'Haro. Nor were they submitted under penalty of perjury, as required by  Fed. R. Civ. P. 33(b)(3) and  28 U.S.C.A. § 1746.[10]

### Amended First Discovery Responses/ Hearing on the First Motion to Compel

After meet and confer efforts failed, Smith filed his First Motion and noticed it for hearing on July 27, 2021.[11]   On the eve of that hearing, O'Haro served her Amended First Discovery Responses. These provided a modicum of additional information about her alleged loans to the Debtor and the loans she allegedly made to other parties. Once again, the Amended First Discovery Responses were not signed by O'Haro; nor were they submitted under penalty of perjury.

---

[9] A month later, on July 9, 2021, O'Haro produced ten (10) documents to Smith, and indicated that apart from  bank accounts and tax returns (for which she had not yet obtained copies),these were all of the responsive documents within her possession and control.

[10] Cobell v. Norton, 310 F. Supp. 2d 77, 85 (D.D.C. 2004)(Unsworn statements made on information and belief, or otherwise not in conformity with 28 U.S.C. § 1746, will not be considered).

[11] O'Haro's Original First Discovery Responses were quite similar to those propounded in the Related Cases (broad objections, vague and incomplete answers, assertions of privilege with no identification of withheld documents, etc.).  A similar motion to compel was heard and granted in the DiSeveria case on July 27, 2021, as well.

At the hearing on the First Motion, Smith demonstrated sizeable transfers between O'Haro's bank account and those of Ron Devine's affiliated entities. Several of these involved large sums being deposited into O'Haro's account and then immediately being withdrawn or transferred elsewhere. Between a) these transfers; b) O'Haro's close relationship with Ron Devine and his entities; c) Devine and BK Racing's financial woes during this period of time; and c) the fact that the transfers appear to be beyond O'Haro's personal financial capabilities, the prospect arose that O'Haro may have been a conduit. The monies "loaned" might not belong to her.

The First Discovery Order

In pertinent part, the First Discovery Order overruled O'Haro's objections to Smith's First Discovery Requests and denied her request for a protective order. O'Haro was ordered to file further amended responses to two Interrogatories, No. 12 (Loans by her to BK Racing) and No. 13 (Loans by her to Third Parties).[12] She was required to redo her document production. And to the extent O'Haro was withholding documents pursuant to claims of privilege or immunity, she was required to specify those documents as well as her basis for withholding them. Id. at 25. O'Haro was required to amend her Discovery Responses and produce all additional documents directed by that order on or before August 17, 2021.

O'Haro served her second amended responses and supplemented her document production on August 17, 2021 (the "Second Amended First Discovery Responses").

**2. The Second Motion and the Second Discovery Order.**

---

[12] At hearing, O'Haro's counsel advised that she had no additional affirmative defenses to identify and no additional facts to disclose in support of her pled affirmative defenses. Thus, O'Haro was not required to provide amended answers to Interrogatories 2-11. The bench ruling did require amendment to the Original First Responses, Interrogatory Nos. 12 and 13. However, the written order inadvertently failed to address these Interrogatories. To her credit, O'Haro made those amendments in her Second Amended First Discovery Responses.

Meanwhile, and due to the aforementioned transactions in O'Haro's bank accounts, on June 9, 2021, Smith served O'Haro with his Second Discovery Requests. These consisted of three interrogatories, specifically seeking the identification of: (1) accounts titled in O'Haro's name, (2) third-party accounts for which she had signatory authority or (3) third-party accounts linked to her own accounts. O'Haro failed to respond to the Second Discovery Requests on or before the July 12, 2021 deadline.

On July 28, 2021, Smith and O'Haro's counsel met and conferred about the Second Discovery Requests. On August 5, 2021, O'Haro served *Defendant Nancy O'Haro's Answers to Interrogatories to Plaintiff's Second Set of Interrogatories* (the "Original Second Discovery Responses").

<u>Original Second Discovery Responses</u>

O'Haro's Original Second Discovery Responses listed nine (9) bank accounts titled in her name. She could not recall any specific third-party accounts for which she possessed signatory authority, but stated she once was administrator for certain family decedent estates. She may have had signatory authority over these accounts. And O'Haro was unaware of any linked accounts. The Original Second Discovery Responses were signed by O'Haro, but her verification was not made under penalty of perjury. Rather, O'Haro made up her own unsworn verification ("true to the best of my knowledge, except for any matters stated upon information and belief, and as to those matters, I believe them to be true.")

On August 9, 2021, counsel for the parties met and conferred about the Original Second Interrogatory Responses. Counsel for Smith advised that, based upon his information,[13] O'Haro had not disclosed all of her accounts. Without identifying those specific accounts, Smith asked

---

[13]Smith had in fact subpoenaed O'Haro's account information from her Bank.

O'Haro to supplement her Original Second Interrogatory Responses. When O'Haro failed to do so, Smith filed the Second Motion on August 17, 2021. A hearing was scheduled for September 14, 2021.

The day before the hearing on the Second Motion, Defendant served Smith with *Defendant Nancy O'Haro's Amended Answers to Plaintiff's Second Set of Interrogatories* (the "Amended Second Discovery Responses"). The Amended Second Discovery Responses disclosed three additional accounts— a safety deposit box; a credit card; and a rewards card.[14] *Id*. at 2. O'Haro also supplied an account name and number for a decedent's account over which she had signatory authority. The Amended Second Discovery Responses contained another stylized verification.

At hearing, Smith insisted there remained at least seven (7) unidentified bank accounts. O'Haro's counsel complained that Smith would not identify these accounts for them, and Smith's counsel countered that he believed the Related Case defendants[15] were making disclosures only when confronted with their nondisclosures. Smith didn't want to provide O'Haro or the Related Case defendants with information by which to fabricate excuses.

Smith's Second Motion was granted. Second Discovery Order. [Doc. 37].

<u>The Second Discovery Order</u>

The Second Discovery Order provided that "[t]he Defendant is hereby ordered to fully respond to interrogatories 1-3 of the Second Discovery Requests under oath as required by Fed. R. Civ. P. 33(b)(3)." *Second Discovery Order*, ¶ 20.

Further, the Second Discovery Order further provided that:

[o]n or before September 24, 2021, the Defendant shall file with the Court a sworn statement certifying to the Court that: a) she has complied with the terms of

---

[14] To the extent that these constitute "bank accounts," the three accounts appear entirely irrelevant to this action.
[15] In the Smith v. Devine adversary, there appear to be dozens of undisclosed bank accounts.

this order, and b) the Interrogatory Responses as amended by the Amended
Interrogatory Responses: (i) fully respond to the Second Interrogatories as
required by Fed. R. Civ. P. 33(b)(3), and (ii) identified all responsive accounts.
*Id*. at 21.

O'Haro filed her compliance certification on September 24, 2021. ("Certification") [Doc.

39]. In the Certification, O'Haro verified under oath that: (a) the interrogatory responses found

in her  Amended Interrogatory Responses fully responded to the Second Discovery Requests,

(b) the Amended Interrogatory Responses identified all  responsive accounts, and (c) she had

complied with the Second Discovery Order. *Id*. at ¶¶ 1-3.

### The November 9, 2021 Deposition.

Smith first requested a date for O'Haro's deposition on May 4, 2021, when he served

his First Discovery Requests. After attempting to coordinate a deposition date for  six months,

the deposition date was finally scheduled for  November 9, 2021.

At her November 9 deposition, Ms. O'Haro invoked her Fifth Amendment privilege

against self-incrimination in response to every substantive question, including:  a) whether she

engaged in a conspiracy with Ron Devine to defraud and hide money from the Debtor's

creditors (*Id*. At 15:7-14) or his own creditors (*Id*. at 15:15-19); b) whether she was paid to

participate in such conspiracies (*Id*. at 15:20-25, 16:1-2);  c) whether trusts and shell companies

were created  and funds were transferred between multiple bank accounts to hide funds from

creditors. (Id. at 19:21-25, 20:1-23, 21:10-25, 22:1-7); and whether O'Haro used bank accounts

titled in her name to facilitate transferring funds amongst various entities as part of such

conspiracy. (*Id*. at 24:4-12).

O'Haro took the Fifth Amendment when asked a) whether the Transfers by BK Racing

to her were  made with the actual intent to hinder, delay, or defraud the Debtor's creditors ( *Id*.

at 26:10-25, 27:1-2); b) whether checks written on accounts titled in her name were loans she

made to the Debtor. (*Id.* at 50:8-13; 50:18-25, 51:1-6; 51:17-25, 52:1-8: 52:16-23; 53: 2-12;

53:16-22;  54:2-9; 54: 17-25, 55:1-10; 55:15-22; 56:5-15; 56:20-25, 57:1-9; 57:19-25, 58:1-5;

58:14-24. 28:23-25, 29:1-8; 31:3-16; 33:12-25, 34:1-2; 36:1-11; 38:10-20; 40:18-25, 41:1-3;

43:4-14; & 45:13-24.); c) whether her Responses to Interrogatories 12 (Loans she made to the

Debtor) and 13 (Loans she made to other Devine Affiliates) were false (*Id.* at 59:7-25, 60:1-25);

and d) whether she willfully failed to comply with the First and Second Discovery Orders (*Id.*

at 64:7-25, 65:1-17, 68:9-15).

Further, O'Haro also invoked the Fifth Amendment in lieu of discussing the seven (7)

bank accounts which, according to Smith, she failed to disclose as required by the Second

Discovery Order. (*Id.* at 68:16-25, 69:1-25, & 70:1-8). She similarly declined to  answer

questions of whether she failed to disclose other responsive accounts (*Id.* at 70:9-15) and

whether her Compliance Certification was false (*Id.* at 70:25, 71:1-20).


### Smith's Report/ O'Haro's Response Brief

Dissatisfied  with   O'Haro's  amended  responses  and  her  unwillingness  to  answer

deposition questions, on December 21, 2021, Smith filed his Report and the Smith Declaration.

He re-noticed both Discovery Motions (and the Orders) for hearing.[16]

The Plaintiff's Report can be considered a contempt motion, a request for further hearing

on the two original motions or yet a third  motion to compel.[17]   O'Haro filed Defendant's Brief

on December 30, 2021, as well as her Declaration. Each side's briefing includes an  analysis of

the various discovery requests and responses.

---

[16] Similar Reports were filed and noticed in the other Related Cases.
[17] Only at hearing did the Defendant suggest that the Report was procedurally deficient, at least as to serve as the basis for default. The Court believes that it is sufficient, and given the present ruling, the procedural distinction is not material.

## DISCUSSION

A.   **Failures to Make Discovery**

  1.  **Smith's First Discovery Requests/O'Haro's Original, Amended and Second Amended First Discovery Responses.**

  a.  As reflected in the Original Discovery Order,  O'Haro's **Original First Discovery Responses** were  deficient in that they a) contained overbroad objections, vague and incomplete answers, b) made assertions of privilege with no identification of withheld documents, etc. and c) were not signed by O'Haro and submitted under oath, as required.  No substantive responses were provided for Interrogatories 2, 7-11 and 15.[18] And while Interrogatory Responses Nos. 12 and 13 provided some details about the alleged loans,  they did not provide any loan terms. No documents were produced with the Original First Discovery Responses.

  These responses were  deficient.

  b.  The  **Amended  First  Discovery  Responses  (to  Smith's Interrogatories 12 and 13)** which O'Haro served on Smith on the eve of hearing on the First Motion  provided more details, but were otherwise similar to her Original First Discovery Responses.[19] In her

---

[18] These Interrogatories pertain to O'Haro's affirmative defenses and  were resolved at the hearing by a requirement that O'Haro file  the Certification. [Doc. 39]

[19] The broad objections, privilege assertions, etc. found in the Original Discovery Responses remained.

amended response to Interrogatory 12, O'Haro identified four alleged loans totaling $285,000 not previously identified in her Original First Discovery Responses. [20] In her Amended Response to Interrogatory 13, O'Haro provided dates and amounts of eight alleged loans made to third parties, totaling $210,721. These loans were also not identified in the Original First Discovery Response. Again, no loan terms were provided.

Regarding Smith's requests for production of documents, in the Amended First Discovery Responses, O'Haro provided a few documents, identified and promised to produce others, but in the main, disclaimed the existence of responsive documents.

Finally, the Amended First Discovery Responses were not submitted under penalty of perjury, as required.

The Amended First Discovery Responses were deficient.

c. The **Second Amended First Discovery Reponses** were filed after the Defendants' objections were overruled at the July 27, 2021 hearing. As to Interrogatories 12 and 13, these latest responses are substantially identical to the Amended First Discovery Responses, sans the overruled objections. No loan terms were provided. The Second Amended First Discovery Responses did address Smith's requests for production of documents, indicating when documents did

---

[20] Indicating that the Original Responses were deficient.

not exist or were beyond O'Haro's possession and control. They stated that all available documents were being produced.[21]

However, the Second Amended First Discovery Responses contained an inadequate verification because they were not made under penalty of perjury. The Amended First Discovery Responses were deficient.

### 2. Smith's Second Discovery Requests.

a. **O'Haro's Original Second Discovery Responses** (the three Interrogatories regarding O'Haro's bank accounts) were tardily filed. These responses were signed by O'Haro but not verified under penalty of perjury. These responses were deficient without regard to whether O'Haro disclosed all of her bank accounts, which, as discussed below, is presently unclear.

The Original Second Discovery Responses were deficient.

b. **O'Haro's Amended Second Discovery Responses** were filed on September 13, 2021, the eve of the hearing on the Second Motion. Again, it is presently unclear whether O'Haro identified all of her bank accounts in this document. However, and as before, the Amended Second Discovery Responses were not made under penalty of perjury.

The Original Second Discovery Responses were deficient.

---

[21] Whether certain categories of documents still are unproduced is discussed below.

3. **Specific Failures to Fully Respond to Discovery still existent as of the January hearing.**

Form and timing aside, even now, O'Haro still has not fully answered Smith's Interrogatories.

a. **First Interrogatory 12.** Smith's First Discovery Requests, Interrogatory No. 12, required O'Haro to identify all loans she made to the Debtor in the four years preceding bankruptcy, including "the material terms of each Loan." Document Request No. 1 sought documents pertaining to these loans.

Through Original, Amended and Second Amended First Discovery Responses, and two hearings, O'Haro has provided no illumination about the specific terms for the loans she claims she made. Id. She has not identified an interest rate, maturity date, payment (or repayment) terms or any security she received for allegedly making loans. She has provided no other details about the alleged loans or the circumstances under which they were made. Thus, O'Haro has yet to provided complete responses to this interrogatory.

b. **Failure to Fully Answer First Interrogatory 13.** Smith's First Interrogatory No. 13 required O'Haro to identify all loans she made to third parties in the four years preceding bankruptcy, including all supporting documents and communications, etc. First Document Request No. 2 sought documents pertaining to these loans. This information is relevant because O'Haro has contended in her Answer

that she  made loans to the Debtor in the ordinary course of business or financial affairs of <u>both</u>. Third and Fourth Affirmative Defense. It is also relevant to Smith's contention that the alleged loans made by the Related Case defendants, including O'Haro, are simply shams.

To date, O'Haro has still not provided specific terms of any of these "loans." She does not identify an interest rate, maturity date, payment (or repayment) terms or any security she received. She provides no other details about the alleged loans or the circumstances under which they were made.  Thus, O'Haro has yet to provided complete responses to this interrogatory.

## 4. Omnibus Document Production Issues.

a.        **Tardy Responses/Productions**. Most    of  O'Haro's discovery <u>responses</u> were filed after their due date.  For example, O'Haro's  Original Discovery Responses were filed nearly a month after their due date.  However, actual document <u>production</u> (to the extent it has happened) has been even less timely. Putting aside for the moment whether O'Haro has additional unproduced documents, almost all the documents produced, were produced late. As set forth in the Smith Declaration, over 90% of the documents that O'Haro has produced were produced after the Court-ordered August 17, 2021 deadline. *Smith Declaration*, ¶¶ 20-22, 30 & 31.[22] Typically, production did not occur until after a motion to compel was filed.

---

[22] To the extent that O'Haro was forced to obtain documents from her Bank, the production delay is understandable.

b. **Improper Manner of Production**. Technically, the documents produced by O'Haro were not produced in compliance with the Federal Rules of Civil Procedure. Rather, they were:  i) produced in six (6) separate productions, ii) not labeled to correspond to the requests, nor were the documents produced as they were kept in the usual course of business, and iii) highly disorganized and incomplete.

5. **Specific Document Production Issues**:

a. **Nonproduction of Bank Statements for Identified Accounts (First Document Request, RPD # 5).** O'Haro only produced periodic bank statements for Wells Fargo accounts with account numbers ending in -7089 and -3800 and  periodic statements for Janney Montgomery Scott accounts with account numbers ending in -7858, -8456, and -9974. She did not  produce bank account records for any of the other accounts identified in her discovery responses. Excluding the irrelevant (credit, safe deposit, rewards, and decedent accounts), there are five identified accounts in O'Haro's name for which no records were provided. (Wells Fargo -4929, -9950,-5030, John Hancock-3505, and Symetra -5887.)   No explanation was given for these omissions.[23] And there is the open question of whether O'Haro has even identified all responsive accounts,[24] much less provided account records.

---

[23]While there might  have been some initial delay in obtaining account documents from the Bank,  this information first was first requested in July, 2021. Production was still outstanding at the hearing, six months later.
[24] Wells Fargo accounts,  -1717, -3601,-3790,-4129,-4435,-7674,-7688, and -8101.

i.   **Documents that O'Haro Says Do Not Exist.**

In his first Discovery Requests, Smith served 42 Requests to Produce Documents on O'Haro.  Even now, O'Haro has produced relatively few documents  responsive to those requests. Smith itemizes this nonproduction in Exhibit 5 to his Report. (the "Noncompliance Report"). Smith is most concerned that O'Haro failed to produce documents that support her primary defenses to this Complaint (i.e., that the Transfers were loan repayments), including:

• No emails or communications regarding the Transfers or alleged loans to the Debtor;

• No "loan" documents or correspondence referencing these Transfers or the alleged loans;

• No accountings or ledgers for the alleged loans; and

• Few communications or corporate or financial records for the Debtor (even though O'Haro was heavily involved in assimilating this information for BK Racing's counsel as he was attempted to prepare bankruptcy Schedules and Statements.

Smith cannot accept that O'Haro lacks so many relevant documents. He considers this lack of production--which is being replicated in the other adversary proceedings-- a willful effort by the Related Case defendants to deny him evidence by which to prosecute his claims.

O'Haro, of course, disagrees. She has offered her own assessment of the document production. Defendant's Brief, Exhibit 2.[Doc. 46]. Apart from the documents already produced, Defendant maintain that no responsive documents exist.

ii. Uncontested Assertions. As to several requests, Smith does not seriously contest O'Haro's assertions. For example, Smith asked for documents relating to investments by O'Haro in any other Devine entity. (RPD #4.) O'Haro disclaims making any such investments and denies having any documents. Smith has not demonstrated otherwise. As to these document requests, Defendant's nonproduction is justified.

iii. Contested RPDs.  In general, but especially as to the alleged loans by Defendant to BK Racing (RBD #1), the alleged loan by Defendant to Springfield Development (RBD# 2), the alleged loans by Defendant to other Devine Affiliates (RBD# 3), O'Haro's bank accounts (RBD #5),  her communications with Ron Devine (RBD #11), and her communications with others  (RBD #12) Smith entirely disbelieves O'Haro's statements and believes her failure to produce documents on these topics constitutes a willful failure to make discovery.

"Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure

of production since one "cannot be required to produce the impossible." <u>Zervos v. S.S. Sam Houston</u>, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).

Therefore, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." <u>Golden Trade v. Lee Apparel Co.</u>, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992) (citing 4A James W. Moore et al., <u>Moore's Federal Practice</u> ¶ 34.17 at 34–68 to 69 (2d ed. 1992) ("A party who denies under oath that the requested documents exist, or that they are within his custody or control, may not be compelled to produce them")).

Even if O'Haro's lack of responsive documents is unlikely, Smith cannot simply presume otherwise. Rather, he must come forward with evidence that demonstrate the existence of unproduced documents. This legal requirement blocks most of Smith's contentions.

  iv. <u>Documents and communications related to the Alleged Loans to BK Racing. (RBD #1)</u>

According to O'Haro, she made $414,500 of interest free "loans" to BK Racing during the relevant time period--even though she was not an employee, officer or shareholder of the company. Apart from the nine produced checks, O'Haro's alleged loans to BK Racing are entirely undocumented.

As Smith points out, third party business loans are not typically made in this manner.   Making Smith more suspicious, the

same assertion is currently being made by other defendants in the Related Cases. They too maintain that their loans and transactions with the Debtor were verbal, and no supporting documents exist. It does not help Smith's skepticism that each of these defendants is associated with Ron Devine.

Having already experienced several prior difficulties with Ron Devine in the base bankruptcy case, Smith believes that he is being stonewalled. Smith believes these contentions of nonexistence are part of an orchestrated scheme intended to deny him the evidence necessary to make his case.  Smith fears this stonewalling will continue until trial, at which time, the Related Case defendants will offer up a self-serving, verbal narrative which he, Smith, will have no way of testing or contradicting.

Smith may be correct. However, it is also plausible that the Related Case defendants are telling the truth. While the alleged loans were commercially unorthodox, it must be noted that BK Racing itself was operated in a most unorthodox, slipshod manner. Further, we have already tried (on stipulated facts) one avoidance proceeding in which a short term, no interest, verbal loan was made to the Debtor by one of Ron Devine's neighbors and was then repaid. Smith v. Pitrelli, 20-03008. Thus, it is possible that O'Haro did business with the Debtor verbally and no loan documents exist.

Because Smith has produced no evidence suggesting the existence of loan related documents, and until shown otherwise, we much accept O'Haro' certification that no documents exist.

v. Documents and communications related to the Alleged loan by Defendant to Springfield Development (RBD#2), and the alleged loans by Defendant to other Devine Affiliates (RBD# 3).

For the same reason, we much accept O'Haro's certification that no other documents and communications exist pertaining to Document Requests 2 and 3. Smith has produced no evidence suggesting the existence of additional loan documents and related communications.

Of course, O'Haro has now produced a few unexecuted loan documents related to the alleged Springfield loan. Conspicuous in its absence is any note evidencing this alleged loan. Even so, the existence of some unexecuted loan documents does not compel the conclusion that O'Haro has possession, custody or control of other documents or even signed documents. Until shown otherwise, O'Haro's certification stands.

vi. Communications between O'Haro and Ron Devine regarding the Transfers, the Action, or the Bankruptcy Case (RBD 11) & Communications between O'Haro and Others regarding the Transfers, the Action or the Bankruptcy Case(RBD 12).

These two requests are more difficult. Smith requested communications (including specifically emails and texts) between O'Haro and Ron Devine, and O'Haro and others, relating to the

Transfers, this Action or the Bankruptcy Case. As to each, O'Haro originally stated that she had no responsive documents, and that any such documents would be on the Debtor's server, which, on information and belief, the Trustee possesses.[25]

Smith's counters that O'Haro has now produced a handful of emails which relate to the Bankruptcy Case, if not the Transfers or this Action. Again, the implication is that O'Haro has cherry picked the emails produced and has withheld other communications.

The emails in question relate to O'Haro's former A& R Foods account. O'Haro is retired, and A& R is defunct. The emails O'Haro has produced were obtained from Ron Devine. As Smith notes, they do not appear to be complete.

Although the parties did not directly address this point, the issue arises whether O'Haro has possession, custody, or control over her old A &R email account.

A request for documents under Fed. R. Civ. P. 34 must be directed to matters which are in the possession, custody, or control of the party upon whom the request is served. Fed. R. Civ. P. 34(a). A party need not have possession of documents to be deemed in control of them if the party has the legal right to control or obtain them. Scott v. Arex, Inc., 124 F.R.D. 39, 41 (D. Conn. 1989))

---

[25] The Trustee says he does not possess the Server.

And control is not even limited to a legal right to obtain documents. Documents are considered to be under a party's control for discovery purposes when the party has the right, authority, **or practical ability** to obtain the documents from a non-party to the action. Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494 (D. Md. 2009). (Emphasis added).

Does O'Haro have control over her old email account? The limited evidence present indicates that she does not. O'Haro is no longer with A&R. A& R is no longer operating. O'Haro asked for emails from Ron Devine, and she says she produced what she got. It is uncertain whether even A&R or Ron Devine presently possess the emails.

Although a friend of Devine, O'Haro  would not appear to possess a practical ability to obtain more, and she certainly has no legal right to do so.  The email account and any other  emails that might be on the A&R server  are not within her control. O'Haro has not failed to make discovery as to these.

vii. Document Requests/Failure to Disclose Bank Accounts/Allegedly False Certification.

As to the Second Discovery Order, Smith says O'Haro failed to disclose all responsive bank accounts or fully answer the Second Discovery Requests. For that reason, Smith also maintains that O'Haro's Certification is false.  At hearing, O'Haro

stood by her statement that she had identified every bank account of which she was aware.

At the latest hearing, Smith provided a list of eight (8) Wells Fargo accounts which he said were in O'Haro's name, but which were not identified in her Original and Amended Second Discovery Responses. Regrettably, Smith did not provide the account names, account type, or otherwise present evidence regarding the same. Only the account numbers were provided.

Based on Smith's counsel's representations that he obtained this account information from the Bank and with his provision of account numbers, it appears likely that there are other, unidentified accounts. On the other hand, and if such accounts exist, it is unclear whether they would be relevant or material to this action. If any such accounts are akin to those most recently identified by O'Haro (credit card, safe deposit box, decedent's estate, and rewards card accounts), they are not relevant. And because they are not what one would customarily consider to be bank accounts, any failure by O'Haro to previously identify these accounts would be understandable. The same would be true if the unidentified accounts were closed prior to the time periods relevant to this action. On this record, we cannot make a finding there has been a failure by O'Haro to identify bank accounts per Smith's Second Discovery Requests.

That said, there is enough here to require the following: a) Smith will provide O'Haro with the relevant account names, type and numbers, and then b) O'Haro will provide an explanation under oath about the identity, purpose and status of these accounts, and an itemization and explanation of any transfers between O'Haro and the Related Case defendants that may be reflected in these accounts for the relevant time periods.

6. **Failure to Answer Questions in the Deposition**. As noted above, Smith's deposition of O'Haro occurred at a time in which she was subject to a federal grand jury subpoena (compelling her to testify regarding the BK Racing bankruptcy and related matters). At her Deposition, and on advice of criminal counsel, O'Haro invoked her right to not to answer most of Smith's questions. The propriety of O'Haro's assertion and the effects of that decision on this case are discussed below in regard to Smith's Sanctions request.

However, for present purposes, it should be reiterated that at the January, 2022 hearing, O'Haro requested that discovery be stayed for 45 days to allow time for her to be released from the Grand Jury Subpoena so that she could testify in this cause. At a January 31, 2022 hearing in another of the Related cases, Smith v. Devine, O'Haro's counsel advised the Court that she had, in fact, been released from the subpoena. When asked whether O'Haro was now willing to answer deposition questions, counsel prevaricated, saying he had not discussed

this with her.  Just why not  is a concern--it was O'Haro who suggested a continuance for  this purpose.

After written discovery is completed, O'Haro will be required to sit for a second deposition.

In sum,  in  this case,  we have repeated failures by O'Haro to fully or timely  make discovery. Most  of the miscues have been rectified, but some have not. For a third category, we simply don't know whether additional unidentified accounts  exist.  The question  becomes what is to be done about these repeated failures to make discovery. Smith believes the answer is to tax O'Haro with his costs and attorneys fees and to enter default against her.

### B.    Sanctions

Under Rule 37, and "[i]f a party…fails to obey an order to provide or permit discovery…the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). Those orders may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; or

> (iii) striking pleadings in whole or in part…(vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(i)-(iii), (vi) & (vii).

### 1.  O'Haro has Failed to Make Discovery and to Comply with the Two Discovery Orders.

Clearly, as to Smith's two sets of Discovery Requests, O'Haro has failed, on  several occasions, to make discovery.  Thus, the imposition of sanctions is appropriate.

**2. O'Haro's Invocation of the Fifth Amendment at her Deposition in this Civil Proceeding does not Warrant Sanctions at this point.**

The Constitutional privilege against self-incrimination is applicable to civil, as well as criminal, proceedings. McCarthy v. Arndstein, 266 U.S. 34, 42, 45 S. Ct. 16, 17, 69 L. Ed. 158 (1924). A valid assertion of the privilege requires only the existence of a plausible possibility that the person might be prosecuted in this country. *United States ex rel. DRC, Inc. v. Custer Battles, LLC,* 415 F. Supp. 2d 628, 633 (E.D. Va. 2006)

Like any privilege assertion, invocation of the Fifth Amendment privilege, "…stands in stark opposition to the otherwise liberal discovery rules, and "undermine[s] to some degree the trial system's capacity to ascertain the truth." Id. (Quoting Robert Heidt, *The Conjurer's Circle- The Fifth Amendment Privilege in Civil Cases,* 91 Yale L.J. 1062, 1082 (1982)). And invocation of the privilege by a party to a civil case may cause unfair prejudice to an opposing party. Id. Accordingly, "[i]n a civil proceeding, a fact finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination.").*ePlus Technology, Inc. v. Aboud,* 313 F.3d 166, 179 (4th Cir.2002).

While constitutionally permitted, making such an adverse inference is not always appropriate. *Custer Battles, LLC,* 415 F. Supp. 2d at 633. Even when appropriate, such requested inferences, "…must be relevant, reliable, and not unfairly prejudicial, confusing, or cumulative." *Id.* Further, "because a witness may only testify as to matters for which they possess 'personal knowledge,' any adverse inference drawn from [a Defendant's] testimonial silence requires finding that [Defendant] had personal knowledge of the subject about which he refuses to testify.

Given O'Haro's involvement in BK Racing's financial affairs and given her financial transactions with BK Racing and the other Ron Devine entities, we do not question the propriety of O'Hara's assertion of the Fifth Amendment privilege. With a criminal inquiry underway that had as its topic the same matters raised in this civil action, O'Haro had reasonable cause to apprehend a real and substantial danger of self-incrimination if she answered Smith's questions.

Frankly, Smith should have anticipated such an invocation of privilege. It was imprudent of him to push for a deposition of O'Haro at this point in time—particularly since written discovery was still outstanding and depositions had not yet begun in this action. Smith could have easily waited a few months to see whether O'Haro would be released from the criminal subpoena, without prejudicing his case. Under the circumstances, O'Haro should not be sanctioned <u>for invoking the privilege at the Deposition.</u>

And we need not, at present, decide whether an adverse inference should be made. At hearing, O' Haro asked that her deposition be deferred 45 days in order that she be released from the subpoena and the ongoing federal investigation. She has received considerably more time than that, and she has been released from the Subpoena. Thus, we will require her to sit for a second deposition, once written discovery has been concluded. O'Haro is cautioned that failure to answer questions at the next deposition may have serious adverse ramifications in this action.

### 3. Smith is Entitled to Recovery of his Costs and Attorneys' Fees.

Rule 37(c) governs the payment of expenses. It provides "[i]nstead of or in addition to [other sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c).

At a minimum, O'Haro should reimburse Smith for his costs and attorneys' fees incurred in bringing the two Motions to Compel and in having to renew and relitigate those motions. As detailed above, in her Original Responses and through several iterations of Amended Responses, O'Haro has materially failed to comply with her discovery obligations. In many instances, while the information was ultimately provided, it was only supplied on the eve of hearing, and after the Plaintiff had expended considerable sums seeking to obtain compliance with his discovery requests. And in significant areas, the discovery still has still not been provided and/or it is presently uncertain whether responsive documents exist.

If replicated in other adversary proceedings (and in this bankruptcy case, it has been), such obstructive conduct would quickly derail the bankruptcy system. Estates typically possess limited or, in many cases, no, resources when litigation is commenced. Trustees should not have to expend large sums of estate monies (or in insolvent estates, personally finance) protracted litigation just to make defendants, here a person closely affiliated with the Debtor and/its principals, comply with the basic rules of discovery.

Monetary sanctions are in order. Thus, O'Haro will be taxed with Smith's costs and fees related to the filing and prosecution of the two Motions.

**4. Default Judgment is too Drastic a Sanction at this Point in the Case.**

We are not presently inclined to enter default judgment against O'Haro.

The Fourth Circuit has held that default is warranted in flagrant cases involving bad faith and callous disregard for the court and rules. Flores v. Ethicon, Inc., 563 F. App'x 266, 274 (4th Cir. 2014); Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989). However, given the competing interests of protecting the judicial process and preserving

a parties' right to a fair day in court, for default judgment to be imposed, a four-part test must be met:

> (1) whether the noncomplying party acted in bad faith;
> (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce;
> (3) the need for deterrence of the particular sort of noncompliance; and
> (4) the effectiveness of less drastic sanctions. Mut. Fed. Sav. & Loan Ass'n, 872 F.2d at 92.

Here, Smith argues that all four factors lie in his favor. This Court agrees that three of the four factors favor Smith; however, at present, the fourth does not.

**A. O'Haro has acted in bad faith.**

A party acts "in bad faith by failing to respond to discovery and to an order of this Court compelling him to answer discovery." Cathcart v. Gen. Holding, Inc. (In re Derivium Capital, LLC), 372 B.R. 777, 784-85 (Bankr. D.S.C. 2007); *accord* Mut. Fed. Sav. & Loan Ass'n, 872 F.2d at 93 (holding that "noncompliance" or "haphazard compliance" with discovery orders constitutes bad faith).

Smith says  Defendant  has engaged in a pattern of bad faith: 1) O'Haro failed to make discovery in her Original First Discovery Responses (as outlined above and in the first Discovery Order); and 2) then she  failed to comply with the First Discovery Order because she: (a) failed to produce documents on or before the Court-ordered August 17, 2021 deadline, and (b) failed to produce all documents that were responsive to the Plaintiff's document requests.

Similarly, 1) O'Haro failed to make discovery in her Original Second  Discovery Responses (as outlined above and in her first Discovery Order); and  2) she failed to comply with the Second Discovery Order because she failed to disclose all responsive bank accounts or fully answer the Second Discovery Requests. According to Smith, she also filed a false Compliance Certification.

Clearly O'Haro has in several respects failed to make discovery and produce documents; and she has failed to fully comply with the two Discovery Orders. Even now, she has not provided the terms of the alleged loans. And it is unclear whether other responsive, but unproduced, documents exist. These sundried failures to make discovery have occasioned significant costs, burden and delay to Smith and BK Racing's creditors. Accordingly, O'Haro has acted in bad faith.

### B. Smith and creditors have been prejudiced.

Courts have found that "failure to produce documents as ordered . . . is considered sufficient prejudice." Payne v. Exxon Corp., 121 F.3d 503, 508 (9th Cir. 1997). This prejudice is worked upon the requesting party because the requesting party is "deprived of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy." Id. In addition, and as stated by our District Court, a party is further prejudiced where it is forced to incur "unnecessary and avoidable costs in the form of attorney's fees for the preparation of the Motion to Compel and the Motion for Sanctions." Lynch v. Novant Med. Group, Inc., 2009 U.S. Dist. LEXIS 81478, *22 (W.D.N.C. 2009).

Delaying "the ultimate resolution of [a] case by failing to provide adequate discovery responses, despite the additional opportunity to do so" also constitutes prejudice. Want v. Bulldog Fed. Credit Union, No. 1:19-cv-02827-JMC, 2021 U.S. Dist. LEXIS 163732, at *10 (D. Md. Aug. 30, 2021). Further, in determining prejudice the Court should consider "the materiality of the evidence" the party failed to produce. Mut. Fed. Sav. & Loan Ass'n, 872 F.2d at 92.

Smith has suffered prejudice in this case. The conduct of O'Haro (like that of defendants in the Related Cases)[26] has greatly delayed the resolution of this adversary proceeding, and the

---

[26] Defendant argued that with other adversary proceedings still pending, there has been no prejudicial delay. However, those actions include the Related Cases (where similar motions to compel are/were pending due to

liquidation of assets and distribution of funds to creditors in the base bankruptcy case. Moreover, the bankruptcy estate has incurred substantial fees and costs associated with O'Haro's failures to answer discovery, comply with the rules of civil procedure, and orders of the Court.

More fundamentally, however, Smith is prejudiced because the evidence O'Haro has withheld, or has been dilatory in producing, is material.  The relationship between O'Haro and BK Racing, the financial condition of the company at the time of the Transfers,  the large sums coming in and going out of her accounts form/to some of the Related Case defendants--all of this goes to the heart of this  case—and whether the Transfers were avoidable. The absence of this evidence (and potentially more) deprives Smith of a meaningful opportunity to evaluate material evidence and incorporate it into his litigation strategy. By willfully withholding material evidence, O'Haro has caused Smith significant prejudice.

### C.  The need for deterrence weighs in favor of a default judgment.

The Fourth Circuit has held that "stalling and ignoring the direct orders of the court with impunity…[is] misconduct [that] must obviously be deterred." Mut. Fed. Sav. & Loan Ass'n, 872 F.2d at 93. "In such cases, not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." Mut. Fed. Sav. & Loan Ass'n, 872 F.2d at 93 (citations omitted).

In the present case, the need for deterrence weighs in favor of a significant sanction. O'Haro was a person closely involved with the Debtor and its principals.  She is potentially an insider of the Debtor; she was integrally involved in providing information to the Debtor's

---

defendants' failures to make discovery) and two others (Smith v. GGR Enterprises, Inc., 20-03033; Smith v. Race Engines, 20-03012) in which other motions to compel are pending. Those situations buttress Smith's assertions of prejudice.

attorney in the early stages of the bankruptcy case; and  she was integrally involved with the company's financial affairs. Incongruously, significant monies flowed between the Defendant, BK Racing, and other Ron Devine affiliates at a time in which the Debtor was under considerable financial strain.

Again, if Smith, or a Chapter 7 trustee, is forced to come to court multiple times—as has been this case and in the BK Racing case as a whole—to obtain information related to a putative insider simply to ascertain her  dealings and transactions with that Debtor or to obtain financial/corporate information about that Debtor, then the bankruptcy case quickly becomes unworkable.  Likewise, the Court cannot countenance a litigation strategy that allows defendants to make their litigation with a bankruptcy estate as expensive and drawn out as possible. Such a litigation strategy does not promote the interests of justice and undermines the bankruptcy process.

### D.  Less drastic sanctions

As Plaintiff notes, in weighing sanctions, a court must consider "the effectiveness of less drastic sanctions." Mut. Fed. Sav. & Loan Ass'n, 872 F.2d at 92 (citations omitted).

Smith argues that in this case, a lesser sanction will not be effective. He notes that the Court has previously admonished O'Haro (and other similarly situated defendants in the Related Cases) that the failure to engage in discovery would lead to sanctions, potentially including striking pleadings or the entry of default judgments.

That is true. At the status hearings that occurred in March and April of 2021, and before Discovery began, this  Court took the extraordinary step of explaining the rules of the game to the Related Case defendants. At least as to some of the defendants, those verbal warnings have not been heeded.

As the current matter exemplifies, in their original discovery responses,  the Related Cases Defendants almost totally failed to make discovery. Then, after being ordered to make discovery, in some instances, they  exactly repeated their prior improper or inadequate responses. O'Haro  has failed to make discovery on several occasions and despite two Orders requiring her to do so. Even now, at a minimum, O'Haro still has not fully answered two of Smith's First Interrogatories, and she hasn't provide account information about identified bank accounts. And it is currently  unknown whether O'Haro has disclosed all of her bank accounts. Smith predicts that such defiance will continue absent the entry of a default judgment.

However, in arguing for default judgment, Smith overlooks the warning of our Circuit that entry of a default judgment must be "a last-resort sanction following the [party's] continued disregard of prior warnings." <u>Anderson v. Foundation for Advancement</u>, 155 F.3d 500, 505 (4th Cir. 1998). Here, while warnings have been made, to date, the Court has not imposed other sanctions. Default judgment would be premature, and hopefully, unnecessary.

### E.  Additional requirements Imposed on Defendant

Because O'Haro has still not fully answered two of Smith's First Interrogatories (Nos. 12 and 13, as to the terms of O'Haro's loans to the Debtor and others), she will be required to further amend her First Interrogatory  Responses, to do so.

And as Smith has, at least by account number, cited to specific evidence that appears to contradict O'Haro's assertions that she has no undisclosed bank accounts,  after receiving the account numbers from Smith, O'Haro will be required to identify those accounts, as described below.

As to production of documents, and in view of the apparent undisclosed accounts, O'Haro is ordered to reexamine her records and to produce all documents relevant to O'Haro RPD # 5, 33   and 34.

A compliance hearing will be held to evaluate the results of these endeavors, and if unsatisfactory, to consider the imposition of more drastic sanctions.

**Based on the foregoing, it is ORDERED:**

1. The Plaintiff's **Motions to Compel as reasserted, are Granted in Part, Denied in Part** on the terms set forth herein;

2. Defendant Nancy O'Haro is  sanctioned for her failures to make discovery and to comply with the two Discovery Orders. Defendant  is taxed with Smith's costs and attorneys' fees incurred in pursuing the two Motions to Compel and this renewed request for relief, pursuant to Rule 37(b)(2)(C). To that end, Smith shall submit, within fourteen (14) days, an affidavit and itemization of his costs and attorneys' fees relating to the Motion to Compel; Defendant shall file any objections thereto within fourteen (14) days thereafter.

3. O'Haro shall within fourteen (14) days,  file and serve upon Smith amended responses to Smith's First Interrogatories Nos. 12 and 13,  to identify the terms of each alleged loan and  the circumstances under which each alleged advance was made.

4. Within seven (7) days, Smith will provide O'Haro with the account names and numbers, for the bank accounts referenced in  his Noncompliance Report, Doc. 45, Exhibit 5, p.12. Within twenty-one (21) days of receipt of the same,  O'Haro will file and provide Smith with a written explanation, under oath, of: (a) the purpose and status of these unidentified

bank accounts, (b) any transactions with the Related Case defendants that may be reflected in these accounts between 2014 and the present,  and (c) why these accounts were not previously identified. Within the same time frame, Defendant will  also produce any additional documents responsive Smith's RPD  # 5, 33   and 34.

5.  Defendant's request to tax Smith with her costs and attorneys' fees is **Denied**.

6.  The Court will maintain jurisdiction over the interpretation and implementation of this order.

7.  A Compliance hearing will be held on June 28, 2022, at 9:30 a.m. at the United States Bankruptcy Court, Charles Jonas Federal Building, Courtroom 2B, 401 West Trade Street, Charlotte, North Carolina.

**SO ORDERED**.

This Order has been signed                                          United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.